IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**TREVOR L. TISDALE**

          **Petitioner,**

v.                                                                          **Criminal No. 2:18-cr-177-8**

**UNITED STATES OF AMERICA,**

          **Respondent.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Trevor L. Tisdale's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF Nos 510. The Government opposed the motion and Petitioner replied. ECF Nos. 519, 528. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On December 6, 2018, Petitioner were named in an eight count Indictment charging him with Conspiracy to Interfere with Commerce by Means of Robbery, in violation of 18 U.S.C. 1951(a) (Count One); Interference with Commerce by Means of Robbery, in violation of 18 U.S.C. 1951(a) and 2, (Counts Two and Four); and Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. 924(c)(1)(A)(ii) and 2 (Counts Three and Five). ECF No. 1. On February 26, 2019, Petitioner pled guilty to Counts One through Five of the Indictment. ECF Nos. 107, 108. According to his Presentencing Report ("PSR"), Petitioner conspired with more than six co-defendants to rob grocery stores at gun point. ECF No. 493 at ¶ 14. As part of the conspiracy, Petitioner and his co-defendants used at least a six-member team on each robbery, which comprised of lookouts, getaway drivers, and two masked gunmen. *Id.* On September 25, 2018, Petitioner's co-defendants robbed Food Lion and stole approximately $4,880

at gun point and Petitioner served as a getaway driver. *Id.* Then on September 29, 2018, Petitioner again served as the getaway driver for his co-defendants who robbed another Food Lion grocery store at gun point and stole approximately $731. *Id.* In his PSR, Petitioner reported his overall health as good and noted no history of any serious or chronic medical conditions, mental health issues, or substance abuse issues. *Id.* at ¶¶ 73-75. Petitioner was assessed a total offense level of 23, a criminal history category I, and a recommended guideline provision of 46 to 57 months, plus 168 months consecutive, imprisonment. *Id.* at ¶¶ 89-90. On September 24, 2019, the Court imposed a total sentence of One Hundred (100) months imprisonment, consisting of 39 Months on Counts One, Two, and Four to be served concurrently, a term of 61 Months on Count Three, to be served consecutively to Counts 1, 2, and 4, and 39 months on Counts 3 and 5 each, to be served concurrently. ECF No. 297. Petitioners sentence is followed by five years of supervised release. *Id.* Petitioner is currently incarcerated at Fort Dix FCI, in New Jersey, and is scheduled for release on December 22, 2025. ECF No. 593.

On December 22, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 490. On March 1, 2021, Petitioner filed a motion through counsel. ECF No. 510. On March 15, 2021, the Government opposed the motion. ECF No. 519. Petitioner replied on March 29, 2021. ECF No. 528

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. ECF Nos. 490, 510. Petitioner argues that the presence of COVID-19 at Fort Dix FCI presents extraordinary and compelling reasons to warrant his release. *Id.* Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing

Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Commission provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. On November 12, 2020, Petitioner submitted a compassionate release/reduction in sentence petition to the Warden at Fort Dix FCI. ECF No. 490 at Exhibit 4. The Warden has not responded to Petitioner's request. ECF Nos. 510, 593. Thus, more than 30 days passed since Petitioner filed his request with the Warden.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. Petitioner alleges that he is at higher risk of serious illness if he contracts COVID-19 because he is a smoker and a racial minority. ECF No. 510 at 4-7. According to the Centers for Disease Control and Prevention ("CDC"), individuals who are current or former cigarette smokers

are more likely to get severely ill if they contract the virus.[1] Moreover, with respect to the impact of COVID-19 on racial minority communities, the CDC states that

> Long-standing systemic health and social inequities have put people from many racial and ethnic minority groups at increased risk of getting sick and dying from COVID-19. Studies have shown minority groups are also dying from COVID-19 at younger ages. People in minority groups are often younger when they develop chronic medical conditions and may be more likely to have more than one condition.[2]

Therefore, Petitioner states that the presence of COVID-19 at Fort Dix FCI warrants extraordinary and compelling reasons for his release. ECF Nos. 490, 510. Unlike other cases, the Court here does not need to speculate about the impact COVID-19 would have on Petitioner's health should he contract COVID-19 because Petitioner already did contract COVID-19 on November 5, 2020. ECF No. 490 at Exhibit 5; *see also,* ECF No. 510, 593. As a result, Fort Dix FCI followed protocol to isolate Petitioner in compliance with the CDC's guidelines. Based on his medical records, Petitioner recovered without any issues. *See* ECF No. 491 (Sealed). Specifically, throughout his quarantine period, Petitioner only reported a loss of taste and smell and a headache. *Id.* However, he did not report experiencing a cough, shortness of breath, fatigue, body aches, a sore throat, diarrhea, nausea, or vomiting. *Id.* Accordingly, the Court finds that Petitioner has not presented any evidence showing extraordinary or compelling reasons that he is at risk of serious illness because of COVID-19.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. Most critically, Petitioner already contracted COVID-19 at Fort Dix FCI. As of April 19, 2021, the BOP has reported a total of 1808 positive cases of COVID-19 for inmates (6 current and

---

[1] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov,* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (Updated April 16, 2021)
[2] *Id.*

2 deaths) and 51 for staff (40 current) at Fort Dix FCI.³ Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.⁴ Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, however, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner conspired with more than six co-defendants to rob grocery stores at gun point. ECF No. 493 at ¶ 14. On September 25, 2018, Petitioner's co-defendants robbed Food Lion and stole approximately $4,880 at gun point and Petitioner served as a getaway driver. *Id.* Then on September 29, 2018, Petitioner again served as the getaway driver for his co-defendants who robbed another Food Lion grocery store at gun point and stole approximately $731. *Id.* During the commission of the robberies, employees and customers were physically restrained when they were forced at gunpoint to get on the floor, preventing them from leaving the store. *Id.* at ¶ 34. Although Petitioner advised the leader of the conspiracy that he would only act

---

³ *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/).coronavirus/
⁴ *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

as a driver and that he would not go into the stores during the robberies, Petitioner was still a vital part of the conspiracy as the getaway driver. Petitioner later accepted responsibility for his criminal conduct. *Id.* at ¶ 27.

Petitioner does not have an extensive criminal record. Although, Petitioner has no juvenile convictions, as an adult, at age twenty, Petitioner was charged with Grand Larceny, Breaking and Entering and Conspiracy. *Id.* at ¶¶ 56-57. He was represented by counsel and pled guilty to the reduced charge of Petit Larceny. *Id.* Accordingly, Petitioner was assessed a total offense level of 23, a criminal history category I. *Id.* at ¶¶ 89-90. On September 24, 2019, the Court imposed a total sentence of One Hundred (100) months imprisonment on all Counts. ECF No. 297. Petitioner was also ordered to pay $5,611.09 restitution and a $500.00 special assessment. *Id.* To date, Petitioner has served about 32.3 percent of his original sentence, with more than 18 months remining to serve his sentence. ECF Nos. 510, 593. He is scheduled for release on December 22, 2025. *Id.* To his credit, while in prison, Petitioner has maintained appropriate behavior and has not incurred any disciplinary infractions in the last six months. ECF No. 519 at Exhibit 4. However, Petitioner has not been able to complete educational courses due to the COVID-19 procedures. ECF No. 528 at 10.

Overall, given the seriousness of Petitioner's crime, the Court finds that Petitioner's release would not promote the respect for law or provide adequate deterrence. Most critically, Petitioner has not demonstrated any extraordinary and compelling reasons to warrant compassionate release. Accordingly, the § 3553(a) factors do not weigh in his favor. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion through counsel, ECF No. 510, is **DENIED**. Furthermore, Petitioner's *pro se* motion, ECF No. 490, is **Moot**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 23, 2021

_____
UNITED STATES DISTRICT JUDGE